IACOBELLI *v.* D & W CONSTRUCTION CO., INC.

SPECIFIC PERFORMANCE—BIDS—CORPORATIONS.

Specific performance for plaintiff, whereby he would be paid
$24,600 for 2,000 shares of stock and $8,000 plus interest for a
note, was properly granted where a bid form provided that
the bidder would pay the sum of "$—— per share" and
would pay the persons selling their shares of stock all sums
due on the corporation's promissory note to that person or
persons, although defendants, who bid $12.30 per share for
plaintiff's stock, contended that their bid of $24,600 included
the amount to be paid in respect to the note.

Appeal from Macomb, Edward J. Gallagher, J.
Submitted Division 2 November 10, 1970, at Detroit.
(Docket No. 7844.)   Decided December 9, 1970.

Complaint by Isidoro Iacobelli against D & W
Construction Company, Inc., Carlo Iacobelli and
Donato Tullio for specific performance.  Judgment
for plaintiff.  Defendants appeal.  Affirmed.

*Joseph D. Nicoletti, P. C.* and *Max D. McCullough,*
for plaintiff.

*Tinkham, Snyder, MacDonald & Wilder,* for de-
fendants.

Before:  V. J. BRENNAN, P. J., and LEVIN and
PETERSON,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

---

REFERENCE FOR POINTS IN HEADNOTE
49 Am Jur, Specific Performance § 130 *et seq.*

Per Curiam.  Plaintiff, Isidoro Iacobelli, and the individual defendants, Carlo Iacobelli and Donato Tullio, owned all the outstanding shares of the capital stock of defendant, D & W Construction Company, Inc.  Each of the three owned 2000 shares of its common stock and each held a promissory note from the corporation in the amount of $8,000.  The parties had a dispute which resulted in litigation. The controversy was resolved by the entry of a consent order.

Pursuant to the order, the parties submitted sealed bids to a certified public accountant.  Under the terms of the bid form, which were agreed upon by the attorneys representing the parties, the highest bidder would buy the other's interest in the corporation.

The bid form provided that the bidder would pay the sum of "$—— per share" and that the successful bidder would pay for the stock within ten days of the date the sealed bids were opened and would, within five days of that day, "pay or cause to be paid to the individual or individuals selling their shares in D & W Construction Company, Inc. any and all sums due on principal and interest of the corporation's promissory note to that individual or individuals which said notes were dated March 1, 1968".

Plaintiff Isidoro Iacobelli bid $5.48 per share.  Defendants Carlo Iacobelli and Donato Tullio bid $12.30 per share.  When it came time to consummate the transaction the defendants tendered a check for $8,046 in payment of the note and $16,600 in payment of the stock, i.e., they contended that the $24,-600 bid by them (2000 x $12.30) included the amount to be paid in respect to the note.  The plaintiff refused to accept the amount tendered and filed a motion for specific performance, claiming that he was entitled to $24,600 for the 2000 shares of stock and,

in addition, $8,000 plus interest for the note. The trial court entered a judgment granting the plaintiff the relief which he sought.

At the hearing on the plaintiff's motion the defendants called one witness, Carlo Iacobelli. He testified that there were no discussions with the plaintiff as to the form of the bid, whether it would be "so much for the stock and so much for the note". He said that the defendants arrived at their bid by valuing the company at approximately $70,000 and dividing by three, which came to $24,600[1] for a one-third interest. He conceded he knew the corporation owed each of the men $8,000 and that this amount was required to be paid, but said that the $70,000 value included the $24,000 indebtedness to stockholders. He said he did not examine the bid form; "we discussed with the attorneys a total and he [the attorney] decided what was the shares". He also testified that when the bids were opened one of his attorneys said, "Well, we'll make out two certified checks, one for $8,000 plus interest and one for $16,600" and that the plaintiff's attorney, responded, "Fine".

Plaintiff's attorney testified that he recalled a discussion after the bids were opened about two checks, but the amounts of the checks were not stated and that it was his understanding that the two checks referred to were one for the note and another for the stock. He also testified that, "in fact I mentioned that the $24,600 was for the stock. And [one of defendant's attorneys] said, 'Yes' ".

A certified public accountant testified that he recommended to the plaintiff "that he bid somewhere in the neighborhood of $8 to $10 a share to protect his assets" and that the book value, estimated at $8 per share, is not "necessarily a reliable value if you're bidding for a going concern. The true value would

---

[1] Mathematically it would be $23,333.33.

be the earning power of the corporation not necessarily the book value." The defendants objected, and the objection was sustained, to a question as to whether the accountant thought $12.30 per share "is disproportionate to the value".

The plaintiff testified that before the bidding Donato Tullio remarked on one occasion, "I think we understand the form of the bid, we are going to bid the share plus the notes", to which the plaintiff said he responded, "That's exactly the way I understand it was". Plaintiff also testified that one of his attorneys suggested to him that he bid $9 a share and that the certified public accountant recommended $8.50 a share, but that he decided to bid $5.48 a share because, "I wasn't interested in the company any more". He recalled the conversation after the bids were opened about two checks but denied that the amounts of the checks were stated.

The sum and substance of defendant Carlo Iacobelli's testimony is that he and his associate evaluated the interests of each of the three men in the capital stock and indebtedness to stockholders of the company at $24,600 and that, through a mistake in communication, their attorney did not deduct $8,000 for the note in converting the $24,600 into a per-share price to be stated in the bid. The defendants did not call their attorney to corroborate Carlo Iacobelli's testimony; nor did Donato Tullio testify.

After a careful examination of the record we are unable to say that the judge clearly erred in granting the plaintiff specific performance. Accordingly, there is no need to determine whether the judge could, as a matter of law, relieve the defendants from their alleged unilateral mistake.

Affirmed. Costs to plaintiff.